UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

ADAM CROWN,

                        Plaintiff,        Civil Action No: 5:13-cv-269
                                                FJS/DEP

v.

DANBY FIRE DISTRICT, DANBY VOLUNTEER
FIRE COMPANY, PAT CAVENEY, RICHARD
OLTZ, RALPH BOWLES, WAYNE HOLDEN,
MATT COOPER, JOHN GADEN and MARK C.
BUTLER,

                        Defendants.

---

**DEFENDANTS DANBY FIRE DISTRICT, DANBY VOLUNTEER FIRE COMPANY,
PAT CAVENEY, RICHARD OLTZ, RALPH BOWLES, WAYNE HOLDEN, MATT
COOPER and JOHN GADEN'S
STATEMENT OF MATERIAL FACTS**

Defendants Danby Fire District, Danby Volunteer Fire Company, Pat Caveney, Richard Oltz, Ralph Bowles, Wayne Holden, Matt Cooper and John Gaden as and for their Statement of Material Facts set forth the following:

      1.     Plaintiff filed a complaint in the above captioned matter naming Danby Fire District, Danby Volunteer Fire Company, Pat Caveney, Richard Oltz, Ralph Bowles, Wayne Holden, Matt Cooper and John Gaden (hereinafter collectively "Danby Defendants") as well as Mark Butler, Esq. as defendants on March 11, 2013. Ex. A.

      2.     Issue was joined by the Danby Defendants by the filing and service of an answer on May 13, 2013. Ex. B.

      3.     Defendant Butler initially filed a motion to dismiss the action pursuant to Fed Rule of Civil Procedure 12(b)(6).

4. Plaintiff responded to said motion and said motion was denied by the court by order dated June 4, 2013.

5. Thereafter, on June 12, 2013, Defendant Butler filed an answer to the complaint. Ex. C.

6. Depositions were completed on July 24, 2014.

7. Thereafter, Plaintiff voluntarily withdrew dismissed his complaint against Defendant Butler said dismissal being so ordered by the court on September 3, 2014. Ex. D.

8. Crown joined the Danby Fire Company in December 2006. Ex. E.

9. At the time he joined the fire department he had no firefighting experience. Id.

10. He served a probationary period of six months after which he was voted in as a full member. Ex. F at p. 17, lines 18-21.

11. During the approximate three years and three months he was a member of the Fire Company Crown never held a position as a line officer. Id. p.73, lines 3-12.

12. During that time frame he never served in a command function at a fire or emergency scene. Id at p. 139, lines 14-22.

13. In April 2008, Plaintiff voted against a member named Christel Trutmann being voted in as a full member. Ex. G.

14. Crown had a personal and business relationship with this member. Ex.F p.23, line 3, through p.29, line 12. See, also: Ex. H (Gaden Affidavit)

15. In May, 2008 Plaintiff sent an e-mail to Chief Gaden advising him of a course that has a place on the enrollment form for the Chief to sign and asking if the Chief wanted him to just use a copy of a T/a [Training Authorization] letter the Chief had given him previously. Ex. I

16. The Chief replied through his wife, the Company secretary that he needed to sign the actual enrollment form. Id.

TADDEO & SHAHAN, LLP • THE EMPIRE BUILDING • SUITE 700 • 472 S. SALINA ST. • SYRACUSE, N.Y. 13202

17. On September 9, 2008, Plaintiff sent an e-mail to the Chief's wife asking when he might be available to "sign off on a couple of academy courses." Ex. J

18. On September 26, 2008 after Plaintiff failed to appear at either of the two training sessions required to maintain interior status, Chief Gaden sent plaintiff a letter advising him that he was no longer an interior firefighter. Ex. K.

19. On October 13, 2008 a meeting was held between Plaintiff and Chief John Gaden and Assistant Chiefs Oliver and Goodman. Ex. L

20. At that meeting Plaintiff presented a four page letter related to the issue of the April 2008 decision to vote Christel Trutmann in as a permanent member. Ex. M.

21. Crown was asked why he had not been in attendance since early 2008 and he responded he didn't know or had no comment. Id.

22. He was asked if he would be attending calls in the future and he replied he didn't know. Id.

23. He was asked if he still wanted to be a member of the fire company and he replied that he didn't know. Id.

24. When asked why he was being so evasive, Crown replied that in regard to a personal incident from early 2008 that he had learned not to discuss personal issues. Id.

25. In December, 2008 Plaintiff asked to meet with Chief Gaden and Assistant Chief Oliver regarding the response to the letter he delivered during the October 13, 2008 meeting. Ex. N.

26. During that meeting Plaintiff became increasingly agitated when discussing the way the probation vote was handled ultimately telling the Chiefs "talking to you is like talking to a fucking wall" and leaving the office. Id. See also, Ex. F. p.137, lines 8-16.

27. In late 2008, Plaintiff began requesting information related to the Fire District and Company. Ex. O.

28. The information was provided in early 2009 after some back and forth regarding whether or not the District had to disclose personal information regarding members. Ex. P.

29. After Plaintiff apparently misplaced some of the responses to his requests for information, the Fire Company Secretary provided him with additional copies in July 2009. Id.

30. As noted in the affidavit of Chief Gaden, Plaintiff's last attendance at a meeting was on December 8, 2009; his last attendance at a training session was on January 5, 2009 and his last attendance at an emergency call was on January 16, 2009. Ex.H.

31. On January 27, 2009 Plaintiff sent an e-mail to Chief Gaden indicating that his academic work load would "curtail his participation." Ex. Q.

32. On February 9, 2009 Christel Trutmann whose election Plaintiff had so vehemently opposed sent a letter to Chief Gaden and all Danby Volunteers advising them that she had returned from studying abroad on February 2, 2009 and would once more be able to attend calls and trainings. Ex. R.

33. On February 2, 2009 Plaintiff sent Ms.Trutmann a letter threatening to sue her over an alleged breach of contract that had occurred in 2007. Ex. S.

34. Plaintiff ultimately sued Ms. Trutmann in Ithaca Small Claims Court and, after the court ruled against him, attempted to have her charged with perjury. Ex.F. p.27, lines 3-20.

35. On March 12, 2009 Plaintiff sent a letter to the Danby Board of Fire Commissioners which raised the same points he asserted regarding Ms. Truttman's being voted in as a full member back in April 2008 and demanding that the Board take "remedial action." Ex. T.

TADDEO & SHAHAN, LLP • THE EMPIRE BUILDING • SUITE 700 • 472 S. SALINA ST. • SYRACUSE, N.Y. 13202

36. By letter dated April 22, 2009, the Board advised Crown that it did not plan to take any action on his March 12 letter. Ex. U.

37. On May 2, 2009 Plaintiff sent a letter to the Board demanding that their attorney write an "official reply" to his letter of March 12. Ex. V.

38. On March 2, 2009, Plaintiff sent an e-mail to the secretary of the Fire Company representing that he was working on a "manpower analysis" and requesting a significant amount of information related to call response for the years 2007 and 2008. Ex. W.

39. The company secretary forwarded the request to the District Secretary who sent a letter to Plaintiff advising him that there were 800 documents available and that she would copy them and send them to him at a cost of twenty-five cents per page. Ex. X.

40. Upon receipt of that letter, Plaintiff wrote back and said he would have no need for the records at that time. Ex. Y.

41. As noted, *supra,* during this time the Plaintiff was not attending meetings, trainings or emergency calls.

42. On January 25, 2010 the Danby Defendants became aware of the fact that Plaintiff was enrolled in the Fire Officer III class at the New York State Fire Academy when he sent an e-mail to the company and district secretaries advising them of that fact. Ex. Z.

43. The New York State Fire Academy is located in Montour Falls, Schuyler County, NY. Ex.F. p.40, lines 1-4.

44. The Fire Officer III class is an advanced fire service management class intended for First Level Chief Officers. Ex. AA

45. At the time Crown enrolled in the Fire Officer III class he was no longer participating as an active member in the fire company. Ex. H at Paragraphs 15-17.

46. At the time Crown enrolled in the Fire Officer III class he had not attended a meeting of the Danby Fire Company since December 8, 2008. Id.

47. At the time Plaintiff enrolled in the Fire Officer III class he had not attended a training session at the Danby Fire Company since January 5, 2009. Id.

48. At the time Plaintiff enrolled in the Fire Officer III class he had not attended an emergency call with the Danby Fire Company since January 16, 2009. Id.

49. Crown used a training authorization form dated September 9, 2008 that he had obtained for an earlier class. Ex. BB.

50. The form indicates that the "sponsoring agency" is the "Danby Volunteer Fire Company." Id.

51. Crown indicated that he was a member in good standing with the Danby Fire Company when he completed the application. Ex. F p.40, lines 10-12.

52. At no time did Chief Gaden give Plaintiff written or verbal permission to attend the Fire Officer III class at the State Fire Academy. Exhibit H, Gaden deposition p.9, line 21 through p. 10, line 11.

53. Crown did not obtain the approval of the Board of Fire Commissioners or anyone else to enroll in the Fire Officer III class. Ex. F. p. 40, line 24 through p.41, line 10.

54. Crown did not even have all of the prerequisites necessary to take the class. Ex.AA, see also, Ex.DD.

55. Crown did not tell anyone at the District level that he would require 20 years worth of data until after he had started the course. Id p.43, lines 7-19.

56. The data he sought included training records, injury/fatality records (including both firefighter and civilian), and response records from 1989 to 2009. Ex.CC.

57. He did not make any attempt to have his instructor contact the Fire District to assist him in obtaining the information. Id. p.44, lines 19-21.

58. Plaintiff made no effort whatsoever to advise the Fire District with regard to the course, the amount of data that would be needed and what he be using the data for nor did he think it necessary that he do so. Id. p.45, line 3 through p.46, line 5.

59. Although in January 2010, Plaintiff represented to the District that he needed the above referenced data for the Fire Officer III class, he states in his complaint that he was requesting the data as part of his "aforementioned concerns."[related to safety] Ex. A at Paragraph 18.

60. New York State Volunteer Firefighter Benefit Law provides Workers Compensation type benefits for volunteer firefighters who are injured in the line of duty.

61. The line of duty includes travel to and from official business including emergency calls, training and other activities.

62. In or around 2009 Plaintiff began assembling a complaint to be filed with the Public Employee Safety and Health Bureau of the New York Department of Labor. Ex. F. p.50, lines 9-11.

63. On March 4, 2010 Chief Gaden sent correspondence to Adam Crown advising him to meet with him on March 12, 2010. Ex.EE.

64. Crown signed his complaint to PESH on March 5, 2010 and it was received by PESH on March 11, 2010. Ex.FF, see also, Ex.F. p.51, lines 4-17.

65. Crown does not know when the Fire Company became aware of the complaint. Id. lines, 18-20.

66. Crown never told the Fire Company he had made the complaint. Id. lines, 21-23.

TADDEO & SHAHAN, LLP • THE EMPIRE BUILDING • SUITE 700 • 472 S. SALINA ST. • SYRACUSE, N.Y. 13202

7

67. Crown refused to meet with the Chief and did not appear for the March meeting. Ex. F. P.51, line 24 through p.52, lines 5.

68. After Crown did not appear for the March 12, 2010 meeting with Chief Gaden, the Chief sent him a letter advising him he was suspended from all activity in the fire company and directed to appear at a Commissioner's meeting on March 23, 2010. Exhibit GG.

69. He was advised that he could have counsel present at the meeting. Exhibit HH, see also, Ex.F. p.53, lines 6-15.

70. On March 23, 2009 Crown attended the meeting of the fire commissioners. Ex. F p. 54, lines 10-12.

71. Crown attempted to record the executive session of the fire commissioners on March 23, 2010. Id. p.56, line 22 through p. 57, line 6.

72. Crown was advised that he would not be permitted to record an executive session. Id.

73. Crown voluntarily turned off the recorder in order to find out what the meeting was about. Id.

74. At that point Mark Butler, Esq. counsel for the district presented him with a Notice of Hearing and related charges. Id.p.57, lines 7-12.

75. Crown was advised by Mark Butler, Esq. counsel for the district that he was brought up on charges related to his attendance at the FO III class without authorization from the Board of Fire Commissioners and his refusal to meet with Chief Gaden when ordered to do so. Id. see, also Ex. JJ.

76. Plaintiff denied the charges and stated that he wanted a hearing. Id.

77. At that point everyone left except Butler and Plaintiff who remained in the room alone.

78. Crown was given a copy of the charges and read them. Id. lines 13-15.

79. The charges advised Crown of the sum and substance of the charges against him. Ex. JJ.

80. The charges advised Crown that a hearing would be held on April 6, 2010. Id.

81. The charges advised Crown of his right to have counsel present. Id. See also, Ex.F. p.57. line 20 through p.58, line 20.

82. Crown was advised of his right to call witnesses and to compel their presence. Id.

83. Crown was advised that a hearing officer would be appointed to conduct the hearing. Id.

84. Crown was advised that the proceeding would be transcribed and that he would be entitled to a copy. Id.

85. Crown was advised that if he was not satisfied with the outcome of the hearing he would have the right to appeal the decision through an Article 78 proceeding. Id.

86. Crown and Butler met for between one and two hours without anyone else present. Id. p.128, line 24 through p.129, line 3.

87. They discussed a wide range of topics ranging from Crown's concerns to whether or not he would be better off starting fresh with a different fire department. Ex. II p.31, line 23 through p.33, line 18.

88. Butler advised Crown that if he resigned they would not have to go through with the hearing and Crown would be free to join another department. Id.

89. Butler also advised Crown that obtaining information for the Fire Officer III class was not intended to be confrontational and that there were alternatives to obtaining the information if the materials were "not readily available without causing a great deal of time and trouble for those that he was requesting it from." Id. p.34, lines 2-20.

TADDEO & SHAHAN, LLP   •   THE EMPIRE BUILDING   •   SUITE 700   •   472 S. SALINA ST.   •   SYRACUSE, N.Y. 13202

90. They discussed the issue of training as it applied to the Officers and Mr. Crown. Id. p.37, line 16 through p.39, line 6.

91. Butler acknowledges that the issue of criminal charges arose but denies that he threatened Plaintiff with criminal prosecution. Id. p.40, lines 5-13.

92. Crown contends that Butler threatened him with criminal prosecution in violation of the law and the code of professional responsibility, but admits that Butler did not threaten him with criminal prosecution until after the rest of the board members left the room and that the Notice of Charges has nothing in it that specifically references a violation of criminal law. Ex. F p.61, lines 6-16; p.86, line 22 through p.88, line 6; p.102, lines 18Ex. A at Paragraph 23.

93. During this time Butler also presented Crown with a letter of resignation. Ex. KK

94. Crown and Butler discussed the fact that there was nothing about Crown's resignation that would prevent him from running for a seat on the Danby Board of Fire Commissioners. Ex. F p.99, line 2 through p.101, line 5.

95. Butler made a change to the letter of resignation that memorialized that fact. Id. see also, Ex. KK

96. Crown initialed the change to the letter and signed it. Id.

97. Upon receipt of the signed letter of resignation, the Danby Fire District accepted Crown's resignation. Ex. LL

98. As a result of Crown's resignation, the Fire District did not proceed with the hearing on the charges against him.

99. On March 29 & 30, 2010, a PESH Investigator appeared at the Danby Fire House to conduct an inspection pursuant to the complaint filed by Mr. Crown. Ex. MM.

100. Prior to the PESH Investigator's appearance, the Danby Fire District was unaware of the fact that anyone had made a complaint. Ex. NN p.19, lines 5-15; Ex.MM.

101. The Danby Fire District was unaware of the fact that Crown had made a complaint to PESH until a reporter writing a story about the PESH inspection advised Commissioner Caveney that the complaint had been made by Plaintiff. Ex. NN p.15, line 16 through p.17, line 6, see also, Ex. OO.

102. After the PESH inspection and Notice of Violations, the Fire District addressed the violations and, as a result of a follow-up inspection conducted on July 26, 2010 the violations were deemed abated and the investigation closed. Ex.PP.

103. Since resigning from the Department Plaintiff has attempted to have Chief Gaden and other members of the Danby Board of Fire Commissioners charged with criminal violations. Ex. QQ.

104. Although the Industrial Board of Appeals directed the Department of Labor to refer the matter of Crown's resignation to the New York Attorney General's Office for investigation of a possible charge of retaliatory firing, the Attorney General's office which received the file on May 4, 2012 has thus far declined to pursue this matter. Ex. RR.

105. Plaintiff continued to pursue his efforts to obtain information from the Danby Fire District including filing an Article 78 proceeding. The Judge hearing the matter ruled that he was entitled to most of the information, but that he was *not* entitled to information the District had already supplied; the District *was* permitted to redact confidential data from the records, the District *was* permitted to charge twenty-five cents per page for the cost of redaction and copying and the Plaintiff was *not* entitled to bring his own copier into the fire house. The court also denied Plaintiff's request for costs. Ex. SS.

106. There is no evidence that the Plaintiff ever pursued the data he was seeking.

Dated   September 15, 2014

_/s/ Steven C. Shahan_
Steven C. Shahan, Esq.
Bar Roll No: 507760
TADDEO & SHAHAN, LLP
**Attorneys for Defendants Danby Fire District, Danby Volunteer Fire Company, Pat Caveney, Richard Oltz, Ralph Bowles, Wayne Holden, Matt Cooper and John Gaden**
Office and Post Office Address
472 South Salina Street, Suite 700
Syracuse, New York 13202
(315) 422-6666- Phone

TO:   Robert N. Isseks, Esq.
Attorney for Plaintiff
6 North Street
Middletown, NY  10940
(845) 344-4322
via ECF - isseks@frontiernet.net