UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

ADAM CROWN,

                           Plaintiff,

          -against-

                                                    5:13  CIV 00269 (FJS/DEP)

DANBY FIRE DISTRICT, DANBY VOLUNTEER
FIRE COMPANY, PAT CAVENEY, RICHARD OLTZ,
RALPH BOWLES, WAYNE HOLDEN, MATT COOPER,
JOHN GADEN and MARK C. BUTLER,

                           Defendants.

_____


## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Steven C. Shahan, Esq.
Taddeo & Shahan, LLP
472 South Salina Street, Suite 700
Syracuse, New York 13202
(315) 422-666
**Attorneys for Defendants Danby
Fire District,Danby Volunteer
Fire Company, Pat Caveney,
Richard Oltz, Ralph Bowles,
Wayne Holden, Matt Cooper,
and John Gaden.**

## TABLE OF CONTENTS

Page

Preliminary Statement .................................................................................................2

Statement of Facts ......................................................................................................3

Argument ....................................................................................................................3

Point One – The Standard for Summary Judgment ...................................................3

Point Two – The Danby Defendants are Entitled to Qualified Immunity ...............5

Point Three – The Danby Fire Company Should be Dismissed ...........................17

Conclusion ................................................................................................................18

## TABLE OF AUTHORITIES

**CASES**                                                                    **Page(s)**

*Anderson v. Creighton*, 483 U.S. 635 (1987) ..........................................................7, 12, 15

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)......................................................3, 4

*Bell v. Burson*, 402 U.S. 535 (1971)............................................................................13, 14

*Bigando v. Heitzman*, 187 A.D.2d 917 (3d Dept. 1992)......................................................14

*Board of Regents v. Roth*, 408 U.S. 564 (1972)..................................................................14

*Boddie v. Connecticut*, 401 U.S. 371 (1971) ...............................................................13, 14

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ...............................................................3, 4

*Cleveland  Bd. of Educ. v. Loudermill, 470 U.S. 532 (1985)* .......................................13, 14

*Cooper v. O'Connor*, 99 F.2d 135 (D.C. Cir. 1938)............................................................5

*Davis v. Scherer*, 468 U.S. 183 (1984) .............................................................................12

*DeLuca v. Atlantic Refining Co.*, 176 F.2d 421 (2d Cir. 1949) ...........................................4

*First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253 (1968)...................................................5

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ....................................................................6, 7

*Leonardi v. Board of Fire Comm'rs*, 643 F. Supp. 610 (E.D.NY 1986)....................14, 15

*Malley v. Briggs*, 475 U.S. 335 (1986) ...........................................................................5, 7

*Matsushita Elec. Industrial Co. v. Zenith Radio Corp.  475 U.S. 574 (1986)*.............3, 4, 5

*Mitchell v. Forsyth*, 472 U.S. 511 (1985) ...........................................................................5

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) .............................13

*Nagle v. Marron*, 663 F.3d 100 (2d. Cir. 2011).....................................................5, 6, 7, 12

*Norris v. United States*, 257 U.S. 77 (1921) ........................................................................5

*Pearson v. Callahan*, 555 U.S. 223 (2009).......................................................................5, 6

*Perry v. Sindermann*, 408 U.S. 593 (1972)........................................................................14

*Reed v. Medford Fire Dep't., Inc.*, 806 F. Supp.2d 594 (E.D.N.Y. 2011)........................14

*Saucier v. Katz*, 533 U.S. 194 (2001) .........................................................................5, 6, 7

*Scheuer v. Rhodes*, 416 U.S. 232 (1974) ...........................................................................7

*United States v. Alvarez*, 132 S. Ct. 2537 (2012) .............................................................11

## STATUTES/RULES

N.Y. General Municipal Law § 172-g ........................................................................10, 13

N.Y. General Municipal Law §209-l .........................................................................14, 15

N.Y. General Municipal Law §209-l(3) ...........................................................................14

N.Y. General Municipal Law §209-l(4) ...........................................................................14

Fed. R. Civ. P. 56...........................................................................................................4, 5

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------

**ADAM CROWN,**

**MEMORANDUM OF
LAW**

Plaintiff,

v.

Civil Action No:
5:15-cv-269 FJS/MEP

**DANBY FIRE DISTRICT, DANBY VOLUNTEER
FIRE COMPANY, PAT CAVENEY, RICHARD
OLTZ, RALPH BOWLES, WAYNE HOLDEN,
MATT COOPER, JOHN GADEN and MARK
C. BUTLER**

Defendants.

-------------------------------------------------------------------------

Presently, before this Court is a motion for summary judgment pursuant to Fed. R. Civ. P.
56 whereby Defendants Danby Fire District, Danby Volunteer Fire Company, Pat Caveney,
Richard Oltz, Ralph Bowles, Wayne Holden, Matt Cooper and John Gaden, by and through their
attorneys, TADDEO & SHAHAN, LLP move this court for an order granting defendants'
motion for summary judgment against plaintiff Adam Crown (hereinafter "plaintiff" or
"Crown") because there are no genuine material issues of fact requiring trial.


## PRELIMINARY STATEMENT

Presently, before this Court is a motion for summary judgment by Danby Defendants
pursuant to Fed. R. Civ. P. 56. Discovery is closed in this matter and the matter is ripe for
determination under Rule 56. The Danby Fire District, Danby Volunteer Fire Company, Pat
Caveney, Richard Oltz, Ralph Bowles, Wayne Holden, Matt Cooper, and John Gaden

respectfully move this court to dismiss the Plaintiff's claims on the grounds that these Defendants are entitled to qualified immunity in that their actions in bringing disciplinary action against the Plaintiff did not violate his Constitutional Rights and that a reasonable fire commissioner standing in the place of the Danby Defendants would not have known that his or her actions in bringing such a disciplinary proceeding or in accepting the Plaintiff's resignation would have violated any statute or rights under the Constitution.

## STATEMENT OF FACTS

The facts of this case are contained in the affidavit of material facts and Exhibits annexed to the Declaration submitted herewith.  Briefly, this case arises out of a claim by the Plaintiff Adam Crown that he was deprived of his right to freedom of speech under the First Amendment to the United States Constitution when he was forced to resign from the Danby Fire Company in retaliation for voicing criticism of the way the Fire Company and Fire District were being operated and, specifically, as a result of having made a complaint to the Public Employee Safety and Health ('PESH") bureau of the New York State Department of Health.

## ARGUMENT

## POINT ONE
## THE STANDARD FOR SUMMARY JUDGMENT

The core principles governing Fed. R. Civ. P. 56 were delineated in a trilogy of cases by the United States Supreme Court in 1986 (*see Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v Liberty Lobby, Inc*. 477 U.S. 242 (1986) and *Matsushita Elec. Industrial Co. v Zenith*

*Radio Corp.*, 475 U.S. 574 (1986)). From these cases, the Court established and refined the basic requirements permitting a party to move for summary judgment.

As noted in *Celotex Corp.*, one of the primary purposes of summary judgment is to "isolate and dispose of factually unsupported claims or defenses" (*Celotex Corp.*, 477 U.S. at 322). In particular, summary judgment is appropriate, under Fed. R. Civ. P. 56 "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law" (*Id.*). The U.S. Supreme Court has held that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" (*Id.*). In this situation, there must be "no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial" (*Id.* at 323).

Importantly, a party seeking summary judgment has the initial burden of "informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" (*Celotex Corp.*, 477 U.S. at 322) (internal quotation marks omitted). Once the moving party has "carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts"(*Matsushita Elec. Indus. Co.*, 475 U.S. at 586, *see DeLuca v. Atlantic Refining Co.*, 176 F2d 421, 423 (2d. Cir.1949). Instead, the "nonmoving party must come forward with specific facts showing that there is a genuine issue for trial" (Fed. Rule

4

Civ. Proc. 56(e)) and if the "record taken as a whole could not lead a rational trier of fact to find

for the nonmoving party, there is no genuine issue for trial" *Matsushita Elec. Indus. Co.*, 475

U.S. at 587*; see First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)(internal quotation

marks omitted). If this occurs, the moving party is entitled to a judgment as a matter of law

because the nonmoving party has failed to make a sufficient showing on an essential element of

her case.


## POINT TWO
## THE DANBY DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

As an initial matter, when discussing qualified immunity, there is a presumption in the

law that a government official who acts does lawfully and within the scope of their authority

(*Norris v. United States*, 257 U.S. 77, 82 (1921); *Cooper v. O'Connor,* 99 F.2d 135, 139 (D.C.

Cir.1938) Thus, it is the opposing party's burden to overcome this presumption and demonstrate

that a government official has either acted unlawfully or outside their scope of authority (*Id.*).


Even though the statutory text of § 1983 does not explicitly provide for immunity, this

particular section has been read in conjunction with the basic principles of common tort

immunities in order to provide qualified immunity protection to government employees (*Nagle v.

Marron*, 663 F.3d 100, 113 (2d Cir. 2011), *Malley v. Briggs*, 475 U.S. 335, 339 (1986)). The

purpose of qualified immunity allows an individual to be free from the burden of standing trial or

confronting the afflictions of litigation. (*Nagle*, 663 F.3d at 114 *quoting Saucier v. Katz*, 533

U.S. 194, 200 (2001), *Mitchell v. Forsyth*, 472 U.S. 511, 526, (1985)), *modified by Pearson v.

Callahan*, 555 U.S. 223 (2009). In particular, qualified immunity "protects government officials

5

from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known" *Pearson,* 555 U.S. at 231 (internal quotation marks omitted). Importantly, "qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." (*Id.*). In the present case, this Court must grant the Danby Defendant's qualified immunity because they have not violated any of the plaintiff's First Amendment rights.

Under the framework laid out by the United State Supreme Court, a two prong test is employed to determine if qualified immunity should attach to the actions of a government official. Specifically, the two prong test is whether, "taken in the light most favorable to the party asserting the injury, . . . the facts alleged show the [official's] conduct violated a . . . right," and, if so, whether that right was "clearly established" at the time of the events at issue" (*Nagle*, 663 F.3d at 114 *quoting Saucier*, 533 U.S. at 201). Importantly, under the *Pearson* decision, the United States Supreme Court held that a court "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first" (*Pearson*, 555 U.S. at 236). In the present case, the analysis follows the traditional application of the rule.

Under the first prong of the qualified immunity analysis, the investigation is limited to whether the particular facts demonstrate that an official violated an individual's rights. Importantly, the "subjective good faith of government officials plays no part in the inquiry" *Nagle 663 F.3d* at 114 *quoting Harlow v. Fitzgerald,* 457 U.S. 800, 816 (1982) (internal

quotation marks omitted). Instead, prong one is an objective inquiry that "allows room for error by guaranteeing officials immunity for reasonable mistakes as to the legality of their actions" (*Nagle*, 663 F.3d at 114 *quoting Saucier*, 533 U.S. at 206), but not for unreasonable mistakes, which should be prevented by an official's knowledge of the "law governing his conduct,"" (*Nagle*, 663 F.3d 114 -115 *quoting, Harlow*, 457 U.S. at 819; *see, e. g., Malley*, 475 U.S. at 341 (qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law").

In assessing a public officials actions, it is important that the standard for qualified immunity is not simply whether the "action in question has previously been held unlawful" (*Anderson v. Creighton*, 483 U.S. 635, 640 (1987) but whether "the unlawfulness of the alleged action must be apparent to a reasonable official in the light of pre-existing law" (Id.; *see also Saucier*, 533 U.S. at 202 ("If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate)(internal quotation marks omitted). Therefore, the first prong of the qualified immunity test can be distilled down to whether "a reasonably well-trained [official] would have known that [his conduct] was illegal." *Nagle* 663 F.3d at 114; *Malley*, 475 U.S. at 345 (internal quotation marks omitted) ("Implicit in the idea that officials have some immunity . . . is a recognition that they may err" and a determination that "it is better to risk some error . . . than not to . . . act at all." *Scheuer v. Rhodes*, 416 U.S. 232, 242 (1974), *abrogated by Harlow*, 457 U.S. 800 (1982).

Turning to the first prong of the test, the evidence is clear that the Danby Defendants were not "on notice" that their conduct in disciplining Adam Crown was "clearly unlawful" or that their actions in disciplining Mr. Crown were so unlawful as to "be apparent to a reasonable public official." At bar, Plaintiff alleges that his rights to freedom of expression under the First

Amendment to the Constitution were violated when the Danby Defendants retaliated against him for raising safety and mismanagement concerns about the manner in which the Fire Company and Fire District were being operated. Ex. A.  Looking at the continuum of events, however, nothing could be further from the truth.  Crown applied to join the Fire Company in late 2006. Ex. E. He did not actually start attending meetings or trainings, however until early 2007. Thereafter, he took classes and participated in drills, trainings and responding to calls. Ex. F. Plaintiff's complaint alleges that he raised various concerns including "fiscal irresponsibility", "unsafe practices, unsafe apparatus" and "fire commissioner misconduct and maladministration." Ex. A at paragraph 15.   Plaintiff also alleges that he raised these concerns to District Commissioners, Officers and various other public officials including but not limited to: Defendant Butler, the Chief of Staff of New York State Assembly woman Barbara Lifton, Tompkins County Fire Coordinator Lee Shurtleff, Town of Danby Board Member Dan Klein, local newspapers, various New York State Fire Service departments and organizations as well as others. Id. at Paragraph 16.   He further alleges that he made further criticism of the Fire Company and Fire District during his two campaigns for a seat on the Danby Fire District Board of Fire Commissioners. Id. at Paragraph 17.

While there is no question that the Plaintiff was a frequent and, in some ways, vocal critic of the manner in which the Danby Fire Company and Fire District was being operated it is noted that it does not appear that the Plaintiff was particularly vocal to the actual members of the Board of Fire Commissioners (i.e. to the Danby Defendants).  Indeed, the most vocal and vociferous opposition he raised was to the admission of a young woman, Christel Trutmann, with whom he had had a business and personal relationship outside of the fire company which had apparently soured a few months before she came up for a vote. Ex. G, Ex. H.

8

On September 26, 2008 the Plaintiff was informed that he was no longer certified as an interior firefighter with the Danby Fire Company because he had missed both of the two available SCBA training drills required to remain interior qualified. Ex. K. On October 13, 2008 Crown met with Chief Gaden and the assistant chiefs regarding the fact that he had not picked up the letter sent to him. Ex. L. Rather than use this opportunity to talk about his alleged concerns for his own safety and the safety of other Danby firefighters and the public, Plaintiff stonewalled the Chiefs answering "I don't know" repeatedly when asked why he was not showing up for calls. Id. He also handed the Chiefs a four page document related to the decision to admit Ms. Trutmann into the department. Id. see also Ex. M. In December 2008, Crown asked to meet with the Chief's and wanted to know what the response to his letter was. Ex. N. Again, rather than using the opportunity to discuss any "safety concerns" he might have, Plaintiff focused on his belief that Ms. Trutmann had been voted in because she was a "pretty girl." Id. Ultimately he responded that he had not been showing up because he "didn't want to deal with any of you" and ended the meeting by telling the Chiefs that "talking to you is like talking to a fucking wall." Id. See also, Ex. F. p.137, lines 8-16. In early 2009, Crown e-mailed Chief Gaden and again, rather than saying anything about not wanting participate in calls or training due to safety concerns, the Plaintiff advised the Chief he would not be in regular attendance due to his "academic workload." Ex. Q.

Plaintiff alleges in his complaint that "between January and March 2010 plaintiff started making requests of District and Company information and records pertaining to his aforementioned concerns." Ex. A at paragraph 18. In point of fact, the Plaintiff first started making requests for information as early as December 2008 when he began asking for information related to the qualifications of the officers of the Fire Company as well as budgetary

information. See Ex. O.  He was advised of the person he should contact regarding budget information and provided with copies of the meeting minutes he requested.  Ex.O & P. After clearing up some confusion regarding whether the Plaintiff was looking for personal information regarding the Company Officers, the information regarding qualifications was supplied to him in March of 2009.  Ex.P.

In the meantime, Plaintiff's participation in the fire company dwindled to nothing.  The last meeting he attended was in December 2008 and his last attendance at a training or emergency call was in January, 2009.  Ex. H (Gaden Affidavit).  It came therefore as a surprise when, on January 25, 2010 after not actively participating in over a year, the secretaries of the fire company and fire district received e-mails indicating that Plaintiff was enrolled in a Fire Officer III class and would be needing data pertaining to the Fire Company and District. Ex. Z. It is of particular importance that the Fire Officer III class is intended for First Level Chief Officers and that Fire Instructor II is a prerequisite for the class.  Ex.AA.  The Plaintiff never having even held a position as a junior officer or been in command at an emergency scene was not a First Level Chief Officer. Ex.F p.73, lines 3-12; p.139, lines 14-22.  Additionally, as his e-mail exchange contained in Ex. DD demonstrates he did not even have all of the pre-requisites required for the class.

Mr. Crown admits that he never asked permission from the Fire District or anyone else to take the Fire Officer III class.[1]  Ex.F p.40, line 24 through p.41, line 10.  He further admits that he never advised the District that he would require some twenty years of data as part of taking that class. Ex.F.p42, lines 7-19. Apparently in his complaint, the Plaintiff now claims that he was

---

[1] New York General Municipal Law section 72-g requires any firefighter taking a class outside the county where his or her department is located to obtain permission from the authority having control over the fire department-in this case, the Danby Fire District. New York Volunteer Firefighter Benefit Law also covers volunteer firefighters while traveling to and from training. NY Vol. Firefighter Benefit Law section 5(d).

seeking the data in regard to his "concerns," however, at the time he requested the data he represented to the fire district that he needed it for a class. Ex. Z&CC.  It should be noted that the "data" he sought included twenty years of not only training and budget data, but also injury data, and response data. Id. Some of this data, especially the injury data as well as the response data which would of necessity reveal names and addresses of patients to whom the Danby Fire Company had responded to as medical providers was highly confidential and in fact protected under the Health Insurance Privacy and Accountability Act (HIPAA).

Having not seen the Plaintiff at a training, meeting or emergency call in over a year and not having received a request to attend the class, the District quite rightly was concerned about whether the Plaintiff was actually in the class or whether this was merely a fishing expedition looking for confidential data including private health information that he might not otherwise have had access to.  When a subsequent investigation demonstrated that the Plaintiff had used a form signed by the Chief some two years earlier, the Chief directed the Plaintiff to meet with him. Ex. BB, EE, see also Ex.H Gaden Depo. P.9, line 21 through p.10, line 11.

It is now clear from Plaintiff's complaint, that the Plaintiff's enrollment in the Fire Officer III class was merely a pretext for his obtaining massive amounts of unredacted data from the fire district. Ex. A, par. 18. Thus, the question before the court, therefore is not whether the Plaintiff was retaliated against due to his protected speech, but whether it was "clearly unlawful" for the Fire District to seek to discipline him for attempting to obtain data under false pretexts and for insubordination and whether the District violated a known constitutional right by doing so.   Danby Defendants submit that there is no constitutional or statutory right to obtain confidential data from one's employer under false pretenses. See, e.g. *United States v. Alvarez,* 132 S. Ct. 2537, 2545, 183 L.Ed.2d 574, 588; 2012 US LEXIS 4879, 17 (First Amendment does

11

not protect "legally cognizable harm associated with a false statement such as invasion of privacy")

However, assuming, *arguendo,* that the Court found the first prong had been met. Then in assessing the second prong of the qualified immunity analysis, the "relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted" (*Nagle*, 663 F.3d at 114). Importantly, this "standard requires the level of generality at which the relevant 'legal rule' is . . . identified to strike the appropriate balance . . . between the interests in vindication of [private persons'] constitutional rights and in public officials' effective performance of their duties." *Nagle v. Marron*, 663 F.3d 100, 114 (2d Cir. 2011); *Anderson*, 483 U.S. at 639)(internal quotation marks omitted). This particular balancing "must allow officials reasonably [to] anticipate when their conduct may give rise to liability" (*Nagle 663 F.3d* at 114; *see Davis v. Scherer*, 468 U.S. 183, 195 (1984)).

Further illustrating this delicate balance, the Court in *Nagle* warned that "describing the right at issue overly broadly eviscerates the protections of qualified immunity; describing it too narrowly negates the possibility of redress" *(Nagle* 663 F.3d at 114). Further refining the definition of a clearly established right, the U.S. Supreme Court had declared that the right in controversy be sufficiently "particularized" to be relevant to the inquiry and the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right" (*Anderson*, 483 U.S. at 640) (*internal quotation marks omitted*).

Again, on the facts of this case, the Danby Fire District was faced with a request for twenty years of data, including confidential data from a member who had not been active in the

12

department for over a year. Moreover, the member was representing that he was enrolled in a class for which permission of the Fire District was required by law and for which, as it turns out, he had not even completed all of the pre-requisites. NY GML section 72-g; Ex. An investigation revealed that the Plaintiff had enrolled in the class using an application that the Chief had signed two years before and for a different class. The earlier e-mails that the Chief and Plaintiff exchanged make it clear that Chief Gaden insisted on signing the forms himself (Ex. I) and that on September 9, 2008, the date on the enrollment form in question, the Plaintiff had asked the Chief to "sign off on a couple of classes." Ex. J. Further, the member refused to meet with the Chief, thereby disobeying a direct order.[2]

It must also be noted that the District fully complied with the law and with the Plaintiff's due process rights in the manner in which it brought disciplinary proceedings against the Plaintiff. As noted in *Cleveland Bd. of Educ*, the Due Process Clause of the United States Constitution declares that "certain substantive rights -- life, liberty, and property -- cannot be deprived except pursuant to constitutionally adequate procedures"(*Cleveland Bd. of Educ. v. Loudermill*,470 U.S. 532, 541 [1985]). Furthermore, the United State Supreme Court has noted that an "essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case" (*Cleveland Bd. of Educ.*,470 U.S. at 541 *quoting Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313 (1950)). In particular, the Supreme Court has "described the root requirement of the Due Process Clause as being that an individual be given an opportunity for a hearing before he is deprived of any significant property interest." *Cleveland Bd. of Educ.*, 470 U.S. at 541 *quoting Boddie v. Connecticut*, 401 U.S. 371, 379 (1971); *see Bell v. Burson*, 402 U.S. 535, 542 (1971).

---

[2] It must be remembered that the Plaintiff had already stonewalled the Chiefs during two separate meetings related to his performance and had ended one of them by telling the Chiefs that "talking to you is like talking to a fucking wall." Ex. L. N, Ex. F p.137, lines 8-16.

13

In essence, this "principle requires some kind of a hearing prior to the discharge of an employee who has a constitutionally protected property interest in his employment" (*Cleveland Bd. of Educ.*,470 U.S. at 541 *quoting Board of Regents v. Roth*, 408 U.S., 564, 569-570 (1972); *Perry v. Sindermann*, 408 U.S. 593, 599 (1972).

Under New York State law, it is well settled that "volunteer firefighters are considered public employees and must be afforded due process in disciplinary proceedings, which includes the right to a hearing held upon due notice and upon stated charges" (*Reed v. Medford Fire Dep't, Inc.*,806 F. Supp. 2d 594, 610 (E.D.N.Y. 2011) *quoting Bigando v. Heitzman*, 187 A.D. 2d 917, 918 (3d Dept 1992)(internal quotation marks omitted)). The right to a hearing with adequate notice listing the stated charges and the time and opportunity to present a valid defense are enshrined in the General Municipal Law §209-l and provide the essential components of due process of law guaranteed under both the New York State Constitution and the United States Constitution (*see Leonardi v. Board of Fire Comm'rs*, 643 F. Supp. 610, 614-15 (E.D.N.Y. 1986)).

GML 209-l (3) states:

"Removals on the ground of incompetence or misconduct, except for absenteeism at fires or meetings, shall be made only after a hearing upon due notice and upon stated charges and with the right to such officer or member to a review pursuant to article seventy-eight of the civil practice law and rules. Such charges shall be in writing and may be made by any such authority. The burden of proving incompetency or misconduct shall be upon the person alleging the same"

(N.Y. Gen. Mun. Law §209-l). Moreover, GML 209-l(4) delineates the required steps in the hearing process including notice of the pending charges in writing, service of the notice on the individual charged including date and time of the hearing, and the use of a hearing to determine the outcome of the allegations ( *Id.*).

14

Importantly, District Courts in the Second Circuit have already found that a General Municipal Law 209-l hearing accompanied by an appeal by and through an Article 78 proceeding exceed the basic requirements of due process. In particular, the District Court for the Eastern District of New York of the Second Circuit has found that the use of a General Municipal Law 209-l hearing along with an appeals process under New York Civil Practice Law and Rules (CPLR) Article 78 proceeding is "more than adequate to meet the requirements of due process" (*Leonardi*, 643 F. Supp. at 614-15) Thus, the combination of a 209-l hearing and the appeal process afforded by a subsequent Article 78 proceeding provide "far more than the notice and an opportunity to respond that are the cornerstones of the procedural due process protected by the Fourteenth Amendment" (*Id.*).

In the present matter, Plaintiff has acknowledged that prior to any talk of resignation, he was provided with a written copy of the Hearing Notice and a copy of the Charges against him. Ex.F p.57, line 20 thorugh p.58, line 20. He further acknowledges that the documents provided him with notice of all of the rights he would be entitled to under GML section 209-l. Id. Under section GML section 209-l, the hearing could have resulted in a finding in the Plaintiff's favor or a finding against him with a punishment ranging from suspension for up to one year to termination. NY GML section 209-l(5).

Based on the above, it is respectfully submitted that under the circumstances at bar, it is not "sufficiently clear" that the Danby Defendants or any other "reasonable fire commissioner" would understand that they were violating some "particularized right" by bringing disciplinary measures against the Plaintiff.[3] *Anderson, supra,* at 640. It should be noted that Plaintiff's first

---

[3] It is anticipated that Plaintiff may refer to the decision of the Industrial Board of Appeals to remand his discrimination claim back to the Department of Labor for referral to the Attorney General for further investigation but it is respectfully submitted that the Attorney General has had that file since May 4, 2012 and has not pursued any action. Ex. RR.

run for a position on the Board of Fire Commissioners occurred in 2008. He ran again in 2009. Ex. F, p.70, line 2. At no time did the Fire District take any action that impeded his ability to speak out against the management of the fire company or district or to run for a position on the board. Ex. F, p.69, lines16 to p.70, line 21. Nor did the District impede his blog other than to remove a link to it from the district website. Ex.F.p.63 line 23 to p.64, line 21  Plaintiff contends that despite the clear language of the letter of resignation, he was coerced into signing it by threat of criminal prosecution Ex.F p.61, lines 6-12; p.86, lines 22-88, p.102, line 18.  Plaintiff's own testimony demonstrates that the only alleged threats were made during his private meeting with former Defendant Butler. Id. While Butler agrees that the subject of the potential criminal nature of using a falsified document or forging the Chief's signature was raised during the meeting he denies that he ever made any explicit threats. Ex.II p.40, lines 5-13. Plaintiff cannot come up with a single incident in which Chief Gaden or any individually named member of the Board of Fire Commissioners made a direct threat to him related to this matter.  Plaintiff has now voluntarily dismissed his claim against Defendant Butler and has thus apparently abandoned his claim that Butler coerced him with threats of criminal prosecution. Ex.D.  This is especially true given Plaintiff's admission in his complaint that he was seeking data related to the fire district in January and March 2010 not for purposes of the Fire Officer III class as he stated in his e-mails, but for purposes of obtaining data, some of it confidential data, with regard to his alleged concerns about mismanagement. Ex. A, paragraph 18.  Again, while, arguably, the First Amendment protects Plaintiff's right to say whatever he wants about the Danby Fire District, it does not protect him when he seeks to obtain confidential data by false pretenses. Ironically, it is the *Plaintiff* who has sought to have the *Defendants* charged with a variety of crimes. Ex. QQ. Even more ironically, after his resignation, the Plaintiff continued his efforts to obtain

information related to response data from the Fire District via Freedom of Information requests although this time under the guise of "writing an article about the fire service." Ultimately he filed an Article 78 proceeding in which the court awarded him exactly what the fire district had been prepared all along to give him which was copies of run records with the identifying information (names/addresses) of medical patients redacted at a cost of twenty-five cents per page. The court denied Plaintiff's request to be permitted to bring his own copy machine into the fire house as well as his demand for attorneys' fees. Ex. SS.

## POINT III

## THE DANBY FIRE COMPANY SHOULD BE DISMISSED

Regardless of how the court rules on the instant motion for summary judgment with regard to the Fire District and the individually named defendants, there is absolutely no evidence whatsoever that the Danby Fire Company played any role in the disciplinary action against Crown or in the decision to permit him to resign rather than face charges. The charges were brought by the Chief before the Board of Fire Commissioners of the Danby Fire District. The Danby Fire Company has its own disciplinary system and by-laws and was not involved in the decision making process at the District level.

## CONCLUSION

For all of the foregoing reasons as well as the information contained in the Affidavit of Material Facts and the Declaration and exhibits annexed thereto the Danby Fire District, the Danby Volunteer Fire Company,  Pat Caveney, Richard Oltz, Ralph Bowles, Wayne Holden, Matt Cooper and John Gaden respectfully requests this honorable Court to enter an Order pursuant to

17

FRCP Rule 56 granting defendants' motion for summary judgment and dismissing the complaint and for such other and further relief as to this Court seems just, proper, and equitable.

DATED:   September 15, 2014

Steven C. Shahan, Esq.
TADDEO & SHAHAN, LLP
Attorneys for Defendant EAVES
472 S. Salina Street- Suite 700
Syracuse, NY 13202
315-422-6666

TO:   Robert N. Isseks, Esq.
      Attorney for Plaintiff
      6 North Street
      Middletown, NY  10940
      (845) 344-4322
      via ECF - isseks@frontiernet.net

18