UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ADAM CROWN,

                               **Plaintiff,**

                               v.                                                  5:13-CV-269
                                                                      (FJS/DEP)

DANBY FIRE DISTRICT, DANBY
VOLUNTEER FIRE COMPANY,
PAT CAVENEY, RICHARD OLTZ,
RALPH BOWLES, WAYNE
HOLDEN, MATT COOPER, and
JOHN GADEN,

                               **Defendants.**
_____

| APPEARANCES | OF COUNSEL |
|---|---|
| **BLOOM & BLOOM, PC**<br>530 Blooming Grove Turnpike<br>New Windsor, New York 12553<br>Attorneys for Plaintiff | KEVIN D. BLOOM, ESQ. |
| **OFFICE OF ROBERT N. ISSEKS**<br>6 North Street<br>Middletown, New York 10940<br>Attorneys for Plaintiff | ROBERT N. ISSEKS, ESQ. |
| **TADEO & SHAHAN, LLP**<br>Empire Building<br>472 South Salina Street<br>Suite 700<br>Syracuse, New York 13202<br>Attorneys for Defendants | STEVEN C. SHAHAN, ESQ. |

**SCULLIN, Senior Judge**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

Plaintiff Adam Crown brings this case against Defendants Danby Fire District ("Fire District"), Danby Volunteer Fire Company ("Fire Company"), Pat Caveney, Richard Oltz, Ralph Bowles, Wayne Holden, Matt Cooper, and John Gaden. Plaintiff's complaint alleges a First Amendment retaliation claim in connection with Plaintiff raising safety and health issues within Defendants Fire Company and Fire District. *See generally* Dkt. No. 1, Complaint. Currently before the Court are the parties' motions for summary judgment. *See* Dkt. Nos. 30, 51.

**II. BACKGROUND**

**A. The parties and conduct underlying Plaintiff's cause of action**

Plaintiff joined Defendant Fire Company in January of 2007. *See* Admin. R. at 20.[1] His association with Defendant Fire Company ended on March 23, 2010, when he resigned. *See* Dkt. No. 65-17, Pl.'s Ex. "12." Defendant Chief John Gaden is the chief of Defendant Fire Company and held that position during the entire interval at issue in this case. *See* Dkt. No. 65-25, Gaden Dep., at 5:3-6. Defendant Fire District is Defendant Fire Company's governing body. *See* Admin. R. at 366, 657. Defendants Caveney, Oltz, Bowles, Holden, and Cooper were the commissioners of Defendant Fire District during the time interval at issue. *See* Dkt. No. 58-3, Defs.' Ex. "LL," at 2. Additionally, Defendant Commissioners Holden, Oltz, and Bowles were

---

[1] The New York Industrial Board of Appeals conducted a four-day hearing in connection with these events, *see infra* Part II.B., resulting in a record of nearly 1,300 pages. These documents appear on the docket as Dkt. Nos. 30-8 through 30-11. To the extent that they represent a consecutively-paginated transcript of the proceedings, this outline cites to the transcript as the Administrative Record and will refer to the transcript's original pagination. Unless otherwise noted, all other citations refer to the system-generated ECF pagination in each document's header.

members of Defendant Fire Company during the time interval at issue in this case.  *See* Admin. R. at 173-77.

During Plaintiff's membership in Defendant Fire Company, he perceived a variety of safety and health issues with respect to Defendant Fire Company's management and operations. Plaintiff raised such issues frequently and often publicly.  For example, in the spring of 2008, Plaintiff openly opposed voting to admit an individual into Defendant Fire Company who had not fulfilled the requirements for membership according to Defendant Fire Company's bylaws. *See* Admin. R. at 173-77.  He wrote to Defendant Chief Gaden detailing this objection and requesting official action and also wrote to Defendant Commissioners.  *See* Dkt. No. 53-8, 55-5, Defs.' Exs. "M," "T."  Plaintiff also made multiple requests for information in connection with Defendant Fire Company's training, response records, injury records, and the like.  *See* Dkt. Nos. 53-10, 55-11 Defs.' Exs. "O," "Z."

Another core issue from Plaintiff's perspective was Defendant Fire Company members being assigned to and undertaking fire rescue tasks for which they had not been properly trained. Plaintiff raised such issues in company meetings, and one of Defendant Commissioners told him that he was going to "too far." *See, e.g.*, Dkt. No. 30-13, Pl.'s Ex. "6f," at 78.  Plaintiff also spoke to a number of individuals outside Defendants Fire Company and Fire District about his concern that Defendant Fire Company was operating unsafely including, among others, the Tompkins County Fire Supervisor.  *See* Admin. R. at 174.  He also published a blog concerning fire safety in the Town of Danby that supported candidates for fire commissioner, and he ran for Danby fire commissioner twice on a platform based upon, among other things, the issues noted.

*See id.* at 754; Dkt. No. 52-2, Crown Dep., at 46.[2] Plaintiff testified that the reaction to his concerns was at best indifferent and at worst hostile; other members of Defendant Fire Company testified that they were treated poorly within Defendant Fire Company because of their relationship with Plaintiff. See Admin. R. at 328.

During his membership in Defendant Fire Company, Plaintiff pursued an ambitious schedule of training and classes at the New York Fire Academy of Fire Science at Montour Falls in Schuyler County. *See* Admin. R. at 62-64, 480-87. According to Plaintiff, Defendant Fire Company's protocol with respect to training was informal and that in practice members of Defendant Fire Company generally could take those classes they wished to take so long as they paid the expenses themselves. *See id.* at 65, 75-76; *see also* Dkt. No. 30-13, Pl.'s Ex. "6f,"at 133 (providing that "[a]ll active members [of Defendant Fire Company] will need approval of the Chief and the Board of Fire Commissioners before enrolling in any *District funded* courses (emphasis added)). One series of classes about which Plaintiff told Defendant Chief Gaden, and in which he enrolled, included Fire Officer I, II, and III. *See id.* at 23-24. Plaintiff further testified that Defendant Chief Gaden signed a blank enrollment form and instructed him to make photocopies of the signed form for the classes that Plaintiff wished to take. *See id.* at 24. Plaintiff then took the first two courses, Fire Officer I and II, and "sent in" his certificates of completion. *See id.* During this time, according to Plaintiff, Defendants did not raise any issue with respect to his taking classes at the Academy. *See id.* at 25. Further, it is undisputed that Plaintiff paid for all of his courses at the Academy.

On January 25, 2010, Plaintiff requested response data and membership rosters of Defendant Fire Company for the interval 1989-2009 together with certain historical information

---

[2] Plaintiff's deposition appears on the docket in multiple parts, Therefore, citations referring to it will use the document's original pagination.

about Defendant Fire Company. *See* Dkt. No. 55-11, Defs.' Ex. "Z." He did so in connection with a research project in his Fire Officer III course and to "anticipate future needs" of Defendant Fire Company. *See id.* He ultimately gained access to much of this information by way of a Freedom-of-Information-Law ("FOIL") request that the Supreme Court, Tomkins County, upheld through an Article 78 proceeding. *See* Dkt. No. 60-4, Defs.' Ex. "SS," at 4.

Defendant Chief Gaden testified that, when he learned of Plaintiff's January 25, 2010 request for information, he began to wonder how Plaintiff could take the Fire Officer III class without authorization. *See* Admin. R. at 530. He then retrieved Plaintiff's authorization form for the Fire Officer III course by way of a FOIL request. *See id.* Defendant Chief Gaden further testified that he did not remember authorizing Plaintiff to take the course. *See id.* at 669-72. It is undisputed that the Defendant Danby Fire Commissioners did not vote to approve Plaintiff's enrollment in the Fire Officer III course.

Defendant Chief Gaden then ordered Plaintiff to attend a meeting on March 12, 2010, where, he testified, he intended to ask Plaintiff about how he was able to enroll in the class. *See id.* at 546; Dkt. No. 56-6, Defs.' Ex. "EE." Plaintiff asked for an alternate meeting time, asked Defendant Chief Gaden for the reason for the meeting, and challenged his authority for ordering Plaintiff to a meeting during his free time. *See* Dkt. No. 30-12, Pl.'s Ex. "6e," at 140- 48. When Plaintiff failed to appear for the meeting, Defendant Chief Gaden suspended him by way of a letter dated March 12, 2010. *See* Dkt. No. 56-8, Defs.' Ex. "GG." The letter further ordered Plaintiff to appear at a meeting of the commissioners of Defendant Fire District on March 23, 2010. See *id.*

At the March 23, 2010 Fire District meeting, Plaintiff testified that he attempted to tape record the proceedings and that Defendant Fire District's attorney told him that he could not do

so. *See* Admin. R. at 42. Plaintiff did acknowledge in his deposition testimony that he received a notice of hearing and that he was advised of his rights. *See* Dkt. No. 52-3, Pl.'s Dep., at 57, 58. He also testified in response to the same line of questioning that "I'm not sure the order of things" and that he was presented a notice of hearing only after agreeing to turn off his audio recording device. *See id.* at 56:21, 56:24-57:12. He further testified that, after he denied the charges, Defendant Commissioners left the room and Defendant Fire District's attorney told him, "if I didn't resign, I was going to be subject to departmental charges and criminal charges." *See id.* at 58:21-59:6, 61:6-9; Dkt. No. 52-4, Pl.'s Dep., at 102 (recalling that "[Attorney] Butler said I would be charged with criminal charges if I did not resign").

According to Defendants, Plaintiff was suspended and subsequently charged for disobeying Defendant Chief Gaden's order to meet with him and also for submitting allegedly forged authorization forms for the Fire Officer II and III classes. *See* Dkt. No. 57-3, Defs.' Ex. "JJ."

At their depositions, Defendant Commissioners had varying degrees of recollection of Plaintiff, of his speech while he was a member of Defendant Fire Company, and of whether they voted to bring disciplinary charges against him. Defendant Commissioner Caveney testified that Plaintiff was in frequent communication with Defendant Commissioners expressing his concerns that the chief officers of the Defendant Fire Company were not capable and that Defendant Commissioners did not have proper oversight over them. *See* Dkt. No. 59-2, Caveney Dep., at 7:20-8:10. He also testified that Defendant Chief Gaden did not specifically tell him that Plaintiff had forged his signature. *See id.* at 23:16-20.

Additionally, Defendant Commissioner Bowles testified that he did not recall voting on Plaintiff's disciplinary charges. *See* Dkt. No. 65-22, Bowles Dep., at 7:24-8:4. Defendant

Commissioner Holden testified that Defendant Commissioners did vote to charge Plaintiff. *See* Dkt. No. 65-23, Holden Dep., at 6:17-21. Defendant Commissioner Cooper testified that he was aware that Plaintiff had raised criticisms against Defendant Fire Company but did not remember voting to bring disciplinary charges against Plaintiff. *See* Dkt. No. 65-24, Cooper Dep., at 6:17-18, 11:4-13.

B.  **Administrative proceedings**

Plaintiff testified that he had been in contact with the New York State Department of Labor for some time in connection with the issues detailed above, among others. *See* Admin. R. at 122; Dkt. No. 30-12, Pl.'s Ex. "6e," at 81. Plaintiff compiled a list of the issues he observed and drafted a formal complaint. *See id.* He then filed the complaint with the New York Department of Labor under the Public Employees' Health and Safety Act of 1980 ("PESH"). *See* Dkt. No. 56-7, Defs.' Ex. "FF." The complaint was dated March 5, 2010, and stamped received on March 11, 2010. *See id.* at 2-3. It is undisputed that Defendants were not aware of Plaintiff's PESH complaint until Safety and Health Inspector Michael Cappelli arrived at a Fire Company meeting on March 29, 2010—six days after the meeting of Defendant Fire District at which Plaintiff was served with disciplinary charges. *See* Dkt. No 58-4, Defs.' Ex. "MM."

In response to Plaintiff's complaint, Inspector Cappelli found that Plaintiff had not made out a prima facie case of discrimination and dismissed his complaint. *See* Dkt. No. 65-3, Pl.'s Ex. "3." Plaintiff then appealed this finding to the New York Board of Industrial Appeals ("Board"), which conducted a hearing over four days on the question of whether Inspector Cappelli's investigation of Plaintiff's PESH complaint was "valid and reasonable." *See* Dkt. No. 30-3, Pl.'s Ex. "1," at 7. The proceedings included testimony from Plaintiff, Defendant Chief Gaden, Defendant Commissioner Caveney, and others.

Defendant Chief Gaden testified that he did not remember which of Plaintiff's enrollment forms he signed or specifically which course or courses he authorized Plaintiff to take. *See* Admin. R. at 669-72. He further testified, under questioning by the hearing officer, that he had no problem with Plaintiff taking some classes without a signed enrollment form because he had given Plaintiff verbal permission to do so. *See id.*

The hearing also included the testimony of Jeffrey Baker, a former Danby Volunteer Firefighter. Mr. Baker testified that he too took courses at the Academy using a photocopy of the Chief's signature and without the commissioners' approval. He further testified that he did this under the Chief's direction and that he was not terminated or otherwise disciplined as a result. *See* Admin. R. at 133-34.

The Board issued a thirteen-page resolution of decision after the hearing in which it found that "there is no evidence that DOL conducted even the most cursory of investigations." *See* Dkt. No. 30-3, Pl.'s Ex. 1, at 8. The Board further found that the safety and health inspector in charge of the initial investigation "took no steps to interview the witnesses proposed by [Plaintiff], and summarily dismissed [Plaintiff's] complaint . . . ." *See id.* It reasoned that Inspector Cappelli misunderstood the scope of Plaintiff's PESH complaint:

> Safety and Health Inspector Cappelli dismissed the complaint because he misconstrued the complaint to be based solely on retaliation for the safety and health complaint [Plaintiff] had filed on March 8, 2010, when in fact, *the discrimination complaint clearly alleged retaliation for raising safety and health concerns throughout [Plaintiff's] tenure with the [Fire Company]*.

*Id.*

Turning to Plaintiff's retaliation claim, the Board then found that the record was "replete with evidence to establish a prima facie case of retaliation." *See id.* at 9. In so doing, the Board found that Plaintiff had prima facie shown the elements of his claim:

protected activity, adverse employment action, and a causal nexus between the two. *See id.* It then discussed Defendant Fire Company's explanation that it suspended Plaintiff because he forged Defendant Chief Gaden's signature on the enrollment form for certain Fire Academy courses. *See id.* at 9-13. It found the explanation to be a pretext for bringing disciplinary charges against Plaintiff. *See id.* at 13.

Neither Plaintiff nor the Commissioner of Labor sought judicial review of the Board's decision. The Board referred the matter to the New York Attorney General, who appears not to have taken further action in prosecuting the case. *See* Dkt. No. 60-3, Defs.' Ex. "RR."

**C. Instant litigation**

Plaintiff then filed his complaint in the instant action, which contained a single cause of action for First Amendment retaliation with respect to the conduct described above. *See generally* Dkt. No. 1, Compl. In connection with his claim, Plaintiff seeks the following relief: compensatory and punitive damages in an unspecified amount, together with attorney fees; an order directing Defendants to remove any mention of discipline from Plaintiff's personnel file; and reinstatement to Defendant Fire Company. *See id.* at 11.

Plaintiff's motion for partial summary judgment seeks to hold Defendants liable for First Amendment retaliation based upon the Board's findings. *See* Dkt. No. 30-23, Pl.'s Mem., at 23. Defendants have moved for summary judgment on two grounds. First, the individual Defendants seek qualified immunity from Plaintiff's claim. Second, Defendants Fire Company and Fire District argue a lack of any unconstitutional policy or custom. *See* Dkt. No. 38 at 28-29; Dkt No. 61-2 at 8.

# III. DISCUSSION

**A. Legal standard**

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. Under that provision, the entry of summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A fact is "material" for purposes of this inquiry if it "might affect the outcome of the suit under the governing law[.]" *Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248.

A party moving for summary judgment bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue, and the failure to meet this burden warrants denial of the motion. *See Celotex*, 477 U.S. at 330. If the moving party meets this initial burden, the opposing party must show, through affidavits or otherwise, that there is a material dispute of fact for trial. *See* Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 250.

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences, in a light most favorable to the nonmoving party. *See Anderson*, 477 U.S. at 255 (citation omitted); *Jeffreys*, 426 F.3d at 553 (citation omitted). The entry of summary judgment is justified only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party. *See Bldg. Trades Employers' Educ. Ass'n v. McGowan*, 311 F.3d 501, 507-08 (2d Cir. 2002) (citation omitted); *Anderson*, 477 U.S. at 250 (instructing that

summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict" (citation omitted)).

## B. Plaintiff's motion for partial summary judgment

> Issue preclusion, or collateral estoppel, which applies not to claims or to causes of action as a whole but rather to issues, bars litigation of an issue when "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits."

*Proctor v. LeClaire*, 715 F.3d 402, 414 (2d Cir. 2013) (quotation and other citations omitted). Further,

> "[t]he burden of showing that the issues are identical and were necessarily decided in the prior action rests with the party seeking to apply issue preclusion. . . . In contrast, the burden of showing that the prior action did not afford a full and fair opportunity to litigate the issues rests with the party opposing the application of issue preclusion."

*Id.* (quotation omitted).

"'[W]hen a state agency acting in a judicial capacity resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the state's courts.'" *Burkybile v. Bd. of Educ. of Hastings-On-Hudson Union Free Sch. Dist.*, 411 F.3d 306, 312 (2d Cir. 2005) (quoting [*Univ. of Tenn. v. Elliott*, 478 U.S. 788,] 799, 106 S. Ct. 3220 [(1986)]). "New York courts give quasi-judicial administrative fact-finding preclusive effect where there has been a full and fair opportunity to litigate." *Id.* (citing *Ryan v. New York Tel. Co.*, 62 N.Y.2d 494, 478 N.Y.S.2d 823, 825-27, 467 N.E.2d 487 (1984)) (other citations omitted). Additionally, "'collateral estoppel may bar relitigation of an issue even against different defendants,' provided that the issue in contention was necessary to the result reached in

the prior proceeding." *LaFleur v. Whitman*, 300 F.3d 256, 274 (2d Cir. 2002) (quoting *Republic Gear Co. v. Borg-Warner Corp.*, 381 F.2d 551, 555 n.1 (2d Cir. 1967)). In this case, as a preliminary matter, the Court finds that the Board was a state agency acting in a judicial capacity because there is no dispute that the Board followed its statutory mandates with respect to procedure. *See Burkybile*, 411 F.3d at 312.

"As a general rule, issue preclusion, unlike claim preclusion, 'may be defeated by shifts in the burden of persuasion or by changes in the degree of persuasion required.'" *Dias v. Elique,* 436 F.3d 1125, 1129 (9th Cir. 2006) (quoting 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 4422 (2d ed. 2002)) (other citations omitted). In particular, "'issue preclusion does not apply when the party seeking to benefit from preclusion has a significantly heavier burden in the subsequent action than in the prior action.'" *Cobb v. Pozzi*, 363 F.3d 89, 113 (2d Cir. 2003) (quotation omitted).

In the Board hearing, the legal question was whether the Commissioner's determination that Plaintiff failed to make a prima facie showing of retaliation was "reasonable and valid." *See* Dkt. No. 30-3, Bd. Res., at 7 (citing *Matter of Nadolecki*, Docket No. PES 07-008, 7 (N.Y. Ind. Bd. App. May 20, 2009) (providing that the Board does not determine the ultimate issue of discrimination in such cases)). Thus, in finding that Plaintiff "met his burden to show that the Commissioner's determination was unreasonable and invalid," *see* Dkt. No. 30-3 at 8, the Board reasoned that "there is no evidence that [the New York Department of Labor] conducted even the most cursory of investigations[,]" *see id.* The Board further reasoned that the safety and health inspector in charge of the initial investigation "took no steps to interview the witnesses proposed by [Plaintiff], and summarily dismissed [Plaintiff's] complaint . . . ." *See id.* This focus on the investigation itself, viewed in light of the legal standard that the Board applied, supports the

conclusion that the issue concerned the propriety of the investigation and not the ultimate issue of retaliation. Thus, it follows that any additional findings the Board made with respect to the merits of Plaintiff's First Amendment retaliation claim were not necessary to determining the legal issue before it. For this reason, the Court declines to afford preclusive effect to such findings as against Defendants, who were not parties to the Board proceeding.[3] *LaFleur*, 300 F.3d at 274.

**C. Defendants' motion for summary judgment**

  *1. Qualified immunity*

Qualified immunity protects government officials from liability when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations and footnote omitted); *see also Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011) (citations omitted); *Sudler v.*

---

[3] Additionally, to the extent that Plaintiff argues that Defendants' interests were adequately represented such that they may be considered in privity with the Commissioner of Labor, the Court finds this argument to be without merit. A "full and fair opportunity to litigate" entails the ability to fully "raise the same factual or legal issues" by the same party or its privies. *Malone v. Bayerische Hypo-Und Vereins Bank, AG*, Nos. 08 Civ. 7277 (PGG), 09 Civ. 3676 (PGG), 2010 WL 391826, *10 (S.D.N.Y. Feb. 4, 2010) (citation omitted); *Mario Valente Collezioni, Ltd. v. AAK Ltd.*, No. 02 Civ. 0099 (RPP), 2004 WL 724690, *7 (S.D.N.Y. Mar. 26, 2004). Parties may be considered in privity where the interests of the nonparty were adequately represented in the first suit. *See Chase Manhattan Bank, N.A. v. Celotex Corp.*, 56 F.3d 343, 346 (2d Cir. 1995) (holding that "[w]hether there is privity between a party against whom claim preclusion is asserted and a party to a prior litigation is a functional inquiry in which the formalities of legal relationships provide clues but not solutions").

In this instance, Defendants were not parties to the prior proceeding and, as such, lacked standing to appeal the Board's determination. They further were unable to present evidence or cross-examine witnesses. Thus, although Plaintiff argues that "there is no question that it was the [Defendants'] interests that were being represented by the DOL Commissioner throughout the hearing before the Board," the Court finds that Defendants lacked a full and fair opportunity to litigate these issues in the prior proceeding.

*City of New York*, 689 F.3d 159, 174 (2d Cir. 2012) (citations omitted). The law of qualified immunity seeks to strike a balance between "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

A court may dismiss a claim based on qualified immunity at the summary judgment stage only if it finds that a defendant has met his burden to demonstrate that no rational jury could conclude (1) that he violated a statutory or constitutional right and (2) that the right was clearly established at the time of the challenged conduct. *See Tavares v. Amato*, No. 9:12-CV-563, 2013 WL 3102031, *17 (N.D.N.Y. June 18, 2013) (quotation omitted). In this context, the facts alleged must be viewed in the light most favorable to the party asserting injury. *See Brosseau v. Haugen*, 543 U.S. 194, 197 (2004) (per curiam) (quotation omitted). Additionally, "[a] court may consider these two questions in either order . . . ." *Raspardo v. Carlone*, 770 F.3d 97, 113 (2d Cir. 2014) (citations omitted).

If the right at issue was clearly established, a public official is still entitled to qualified immunity if "officers of reasonable competence could disagree" on the legality of the action at issue in its particular factual context. *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *see also Cerrone v. Brown*, 246 F.3d 194, 202 (2d Cir. 2001). Thus, qualified immunity provides a broad shield, s*ee Zalaski v. City of Hartford*, 723 F.3d 382, 389 (2d Cir. 2013), that "provides ample protection to all but the plainly incompetent or those who knowingly violate the law," *Malley*, 475 U.S. at 341.

As a preliminary matter, the Court finds that the right at issue in this case—namely, Plaintiff's right to be free of retaliation for raising safety and health concerns within Defendant

Fire Company—was clearly established at the time of the challenged conduct.[4] However, it is clear to the Court that the individual Defendants acted in an objectively reasonable manner based upon the undisputed facts known to them at the relevant times. First of these was Plaintiff's unauthorized enrollment in the Fire Officer III course. New York law requires fire district governing boards to authorize a volunteer firefighter's attendance at training courses when such courses take place outside the county in which the particular fire district is located. *See* N.Y. Gen. Mun. Law § 72-g(1)(a). Because Danby is located in Tompkins County, New York law required Defendant Fire District to approve any Danby volunteer firefighter's coursework at the Academy. Thus, Plaintiff's enrollment in the Fire Office III class without formal authorization was a clear violation of New York law that objectively justified the bringing of disciplinary charges.[5] *Cf. Conn. ex rel. Blumenthal v. Crotty*, 346 F.3d 84, 104 (2d Cir. 2003) (holding that following a statute with "no transparent constitutional problems" weighs heavily in favor of granting qualified immunity).

Second, it is undisputed that Plaintiff failed to obey Defendant Chief Gaden's direct order to attend a meeting on March 12, 2010, and that Plaintiff had attended very few functions of Defendant Fire Company, of any kind, for almost a year preceding his suspension and

---

[4] *See Janusaitis v. Middlebury Volunteer Fire Dep't*, 607 F.2d 17, 18-19, 23 (2d Cir. 1979) (holding that a volunteer firefighter's report to his superiors urging that training and discipline were inadequate within the company was protected speech); *see also Shanks v. Vill. of Catskill Bd. of Trustees*, 653 F. Supp. 2d 158, 169 (N.D.N.Y. 2009) (finding that volunteer firefighter's speech addressing the adequacy of fire company training and the integrity of its equipment "went to the very heart of the [c]ompany's ability to effectively and safely perform its public function"). The First Amendment protects such speech when it is "'made as a citizen on matters of public concern . . . .'" *Shanks*, 653 F. Supp. 2d at 165 (quoting *Johnson v. Ganim*, 342 F.3d 105, 112 (2d Cir. 2003)).

[5] It is not entirely clear based on this record whether Defendant Commissioners formally served Plaintiff with the charges or, indeed, whether they formally voted to approve such charges. Nonetheless, in the interest of viewing the facts in a manner most favorable to Plaintiff, the Court assumes for purposes of this analysis that they did. *See Brosseau*, 543 U.S. at 197.

subsequent resignation at the March 23, 2010 meeting of Defendant Commissioners. These facts suggest that Defendants could properly have acted to remove Plaintiff from Defendant Fire Company even without a hearing. *See* N.Y. Gen. Mun. Law § 209-l(3) (providing that, with respect to volunteer firefighters, "[r]emovals on the ground of incompetence or misconduct, *except for absenteeism at fires or meetings*, shall be made only after a hearing upon due notice and upon stated charges" (emphasis added)).

Thus, viewing the record as a whole, the Court finds that, even assuming that Defendant Commissioners and Defendant Chief Gaden knew about Plaintiff's protected speech, any reasonable juror would have to conclude that the individual Defendants in this case were objectively reasonable in bringing disciplinary charges against him for enrolling in Fire Academy courses without authorization and by means of allegedly forged documents and for failing to follow Defendant Chief Gaden's orders.[6] *Malley*, 475 U.S. at 341. Accordingly, the Court grants Defendants' motion for summary judgment with regard to the individual Defendants based on their defense of qualified immunity.

---

[6] Moreover, the Court finds that Plaintiff has not proffered sufficient evidence to raise a genuine issue of material fact as to the individual Defendants' subjective intent for instituting disciplinary proceedings against Plaintiff.

> "Upon a motion for summary judgment asserting a qualified immunity defense in an action in which an official's conduct is objectively reasonable but an unconstitutional subjective intent is alleged, the plaintiff must proffer particularized evidence of direct or circumstantial facts . . . supporting the claim of an improper motive in order to avoid summary judgment."

*Sheppard v. Beerman*, 94 F.3d 823, 828 (2d Cir. 1996) (quotation omitted). In particular, where "a jury may find that [defendants] intentionally retaliated against plaintiffs, . . . it follows that the same jury may find that [those defendants] did not act 'objectively, legally, and reasonably.'" *Glenview Constr., Inc. v. Bucci*, 165 F. Supp. 2d 545, 555 (S.D.N.Y. 2001) (quotation and internal citation omitted). In this case, no reasonable finder of fact could conclude, based on this record, that the individual Defendants intentionally retaliated against Plaintiff.

## 2. Municipal liability

A municipality may be liable under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury[.]" *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, (1978).

> To establish the existence of a municipal policy or custom, the plaintiff must allege: (1) the existence of a formal policy officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of the policymaking officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to "deliberate indifference" to the rights of those who come in contact with the municipal employees.

*Prowisor v. Bon-Ton, Inc.*, 426 F. Supp. 2d 165, 174 (S.D.N.Y. 2006) (citation omitted).

Further, although a municipality may be held liable for a single action where officials possess "final policymaking authority . . . with respect to the particular conduct challenged in the lawsuit," *Roe v. City of Waterbury*, 542 F.3d 31, 37 (2d Cir. 2008) (citation omitted), Supreme Court precedent has suggested that the "policymaker" theory of *Monell* liability is available only in rare circumstances. Accordingly, the Court has instructed that, when addressing *Monell* claims premised on a single act or occurrence, courts must "adhere to rigorous requirements of culpability and causation" so as to avoid collapsing *Monell* liability into respondeat superior liability. *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 415 (1997).

In light of this legal standard, courts have in many cases held that allegations that a municipal employee's actions evidence a pattern of suppressing a plaintiff's protected speech in particular have been held insufficient to rise to the level of demonstrating an actionable

municipal policy. *See, e.g. Wood v. Town of East Hampton*, No. 08-CV-4197, 2010 WL 3924847, *23 (E.D.N.Y. Sept. 23, 2010) (collecting cases).

In this case, Plaintiff alleges that Defendants' actions "constitute an ongoing, intentional policy and practice of punishing [P]laintiff for the exercise of his First Amendment rights. . . ." *See* Dkt. No. 1, Compl., at ¶ 37. Construed liberally, the record can at most be seen as evidencing Defendants' indifference to Plaintiff's activism in connection with safety and health issues over a span of some three years, followed by the single occurrence of suspending Plaintiff and bringing disciplinary charges against him. Thus, the record is devoid of any suggestion that the Defendant Fire Company or Defendant Fire District acted in a similar fashion with respect to any others who were similarly situated to Plaintiff. Accordingly, the Court finds that Plaintiff's allegations are insufficient to sustain a claim for an unconstitutional municipal policy or custom. *See Wood*, 2010 WL 3924847, at *23.[7]

Accordingly, the Court grants Defendants' motion with respect to Plaintiff's *Monell* claims against Defendants Fire Company and Fire District.

### IV. CONCLUSION

Having reviewed the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion for summary judgment, *see* Dkt. No 30, is **DENIED**; and the Court further

---

[7] Moreover, to the extent that Plaintiff sues the individual Defendants in their official capacities, his claims are duplicative of his municipal liability claims against Defendants Fire Company and Fire District. *See Frank v. Relin*, 1 F.3d 1317, 1325 (2d Cir. 1993). Accordingly, the Court grants Defendants' motion with respect to Plaintiff's claims to the extent that he sues the individual Defendants in their official capacities.

**ORDERS** that Defendants' motion for summary judgment, *see* Dkt. No. 51, is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendants and close this case.

**IT IS SO ORDERED.**

Dated: March 31, 2016
      Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge